IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RENEE L. MCCRAY** | } | |
| *Plaintiff,* | } | |
| vs. | } | Civil Action No.: GLR-14-3445 |
| **WELLS FARGO BANK, N.A.** | } | |
| *Defendant.* | } | |
| | } | |

**PLAINTIFF'S REPLY TO RESPONSE AND OPPOSITION OF WELLS FARGO BANK, N.A. TO MOTION FOR RELIEF FROM A JUDGMENT OR ORDER**

COMES NOW Plaintiff, Renee L. McCray, in the above reference case Reply to Response and Opposition of Wells Fargo Bank, N.A. to Plaintiff's Motion for Relief from Judgment or Order and states the following:

Defendant stated "McCray does not address what continuing interest, if any, the bankruptcy court has with respect to issues concerning the right to enforce the Deed of Trust." Plaintiff asserts she filed the Adversary Proceeding to determine the validity of the Corporate Assignment of Deed of Trust. The validity of the assignment has not been decided. In Judge Russell's order dated October 14, 2015, he dismissed Plaintiff's Adversary Proceeding with prejudice, therefore, since Plaintiff's complaint was dismissed with prejudice, Plaintiff will not be able to bring the same claim for declaratory judgment for the validity of the lien in the Circuit Court for Baltimore City.

Defendant states "McCray presented no coherent argument, no legal reason and no new facts which would justify disturbance of Judge Alquist's Order dismissing the adversary proceeding." Plaintiff asserts Defendant is incorrect and stated the facts and coherent arguments in the Motion for Relief from Judgment (Doc. 6). Plaintiff asserts the following are also statements of facts and coherent arguments that should be considered.

Further, if Defendant is correct that "Once again, McCray is confused" with Judge Alquist order concerning the Rule 2004 Examination, Plaintiff apologizes for reading the order

1

incorrectly. Plaintiff cannot afford counsel and is learning the law on the fly and trying to follow the correct protocols for the court's rules and procedures as best she can. However, Plaintiff does object to Judge Alquist's Proposed Findings and Conclusions as stated below.

## Lack of Standing

Plaintiff objects to Judge Alquist's Proposed Findings and Conclusions that Plaintiff's "Complaint should be dismissed for Plaintiff's lack of standing." Although the claims in this Adversary Proceeding arose pre-petition and are distinct from Plaintiff's Federal lawsuit McCray v. Federal Home Loan Mortgage Corporation, el at., Case #GLR-13-1518, the Chapter 7 Trustee is the sole party vested with authority to bring these causes of action, unless the Trustee exempted or abandoned the property. As a general matter, the concept of standing concerns whether a litigant "is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In federal courts, however, there are two types of limitations on standing – one constitutional, the other prudential, *id.*

The constitutional limitation stems from the "case or controversy" requirement in Article III. To satisfy it, a plaintiff must have suffered an injury in fact fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This limitation is jurisdictional. See *Morrison v. YTB v. Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011). Plaintiff, however, easily meets the requirements for constitutional standing since she alleges an injury traceable to Defendant's conduct and likely to be redressed by a favorable decision.

Prudential limitations on standing lack this constitutional dimension, *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008), and are "essentially matters of judicial self-governance" designed to ensure that courts resolve only those disputes that are suitable for judicial resolution, Warth, 422 U.S. at 499-500. One is that a plaintiff is in fact the person entitled to bring the action – that, in other words, "the named plaintiff owns the claim . . . ." *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010). This limitation is embodied in the requirement of Rule 17(a)(1) that an action must be prosecuted "in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1) (made applicable by Fed. R. Bankr. P. 7017). See RK Co., 622 F.3d at 851

(noting that "Rule 17(a) [is] a codification of this non-constitutional limitation on standing"); Rawoof, 521 F.3d at 757.

Questions about who is the proper plaintiff to pursue a claim belonging to a bankruptcy estate, the debtor or the trustee, are questions under Rule 17(a) about who is the real party in interest. See, e.g., Lujano v. Town of Cicero, No. 07 C 4822, 2012 WL 4499326, at *5 (N.D. Ill. Sept. 28, 2012); Van Sickle v. Fifth Third Bancorp, No. 12-11837, 2012 WL 3230430, at *2-*3 (E.D. Mich. Aug. 6, 2012); Garcia v. American Security Ins. Co., No. 8:12-cv-00728-EAK-EAJ, 2012 WL 2589862, at *1-*2 (M.D. Fla. July 3, 2012). Plaintiff asserts, she is the real party in interest since the bankruptcy Trustee abandoned the property known as 109 Edgewood Street, Baltimore, Maryland in the bankruptcy case, therefore, Plaintiff's property reverted back to her as the real party in interest giving Plaintiff standing to proceed with this adversary proceeding.

## Plaintiff Fails to State a Claim

Plaintiff also objects to Judge Alquist's recommended dismissal because "the Amended Complaint, Ms. McCray fails to state a claim upon which relief can be granted." In considering a motion to dismiss under Rule 12(b)(6) the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. _Ashley County, Ark. v. Pfizer, Inc._, 552 F.3d 659, 665 (8th Cir. 2009).

In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." _Ossman v. Diana Corp._, 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, (2007) and Ashcroft v. Iqbal, 556 U.S. at 662 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement does not require detailed factual allegations. _Martin v. ReliaStar Life Ins. Co._, Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555). On the other hand, a

"pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . .be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Plaintiff's amended complaint was for a declaratory judgment for the validity of the alleged lien. Plaintiff has proven that the June 26, 2012 Corporate Assignment of Deed of Trust was fraud upon the court and that it could not possibly be a legal assignment to the Defendant for Plaintiff's property. Defendant has not produced any admissible evidence that the assignment was valid. A properly recorded assignment of the Deed of Trust memorializes the Note's negotiation. For a Note to change ownership and remain secured through the Deed of Trust each and every transfer of the Note, by indorsement or negotiation, must be performed with a parallel assignment to remain as a secured party of record. Plaintiff disputes American Home Mortgage ever indorsed the alleged note to Wells Fargo Bank, N.A. In Plaintiff's amended complaint it states "Plaintiff have received **a Certified Copy** of the alleged Note from Wells Fargo Home Mortgage **with no indorsements** in September 2012 see **EXHIBIT L** attached." (Amd. Complt., pg. 14, ¶46) Defendant has not offered any viable explanation for the "Certified Copy" of the note without any indorsement. So how does this alleged note now magically appear with an indorsement from American Home Mortgage to Wells Fargo Bank, N.A.? Please take **Judicial Notice** that in Black's Law Dictionary 6th Edition, Certified copy is defined as: *A copy of a document or record, signed and certified as a true copy by the officer to whose custody the original is intrusted. Doremus v. Smith*, 4 N.J. Law, 143; *People v. Foster*, 27 Misc. Rep. 576, 58 N.Y. Supp. 574; *Nelson v. Blakey*, 54 Ind. 36.

4

Thus, Plaintiff has proven her claim that the June 26, 2012 Corporate Assignment of Deed of Trust was not only invalid but in fact illegal, which Defendant did not address. Plaintiff recently discovered the June 26, 2012 Corporate Assignment of Deed of Trust was a felony crime against Plaintiff and her property under Title 18 § 335, and was reported to Rod J. Rosenstein, United States Attorney for the District of Maryland, Department of Justice (DOJ). Now weeks after Plaintiff filed the Affidavit of Criminal Complaint, Defendant, by and through its attorneys is now stating the June 26, 2012 Corporate Assignment of Deed of Trust has "**no beneficial interest**" (Doc. 6, pg. 7, Annex 4). This conflicts with Defendant's previous claim that "The assignment grants and conveys from MERS to Wells Fargo the "beneficial interest under the Deed of Trust." (Doc. 34-1, pg. 7). Further, Defendant has not addressed the fact that MERS could not legally assigned the Corporate Assignment of Deed of Trust for the alleged lender, American Home Mortgage, who is no longer in business. The assignment also violates Md. Statute of Frauds:

**Md. Code Real Prop. § 5-103. Transfer of interest; writing required**

*"No corporeal estate, leasehold or freehold, or incorporeal interest in land may be assigned, granted, or surrendered, **unless it is in writing signed by the party assigning, granting, or surrendering it**, or his agent lawfully authorized by writing, or by act and operation of law."* [Emphasis added.]

Plaintiff also objects to Judge Alquist's Proposed Findings and Conclusion that "Wells Fargo is the holder, has authority to enforce the note..." because Judge Alquist did not state what witnesses testified and appeared with authenticated documents that were presented as evidence on the record in support of her decision that Defendant was the legal "holder". Judge Alquist stated "Under Maryland law, a promissory note is a negotiable instrument governed by the Uniform Commercial Code...and the rights under an associated deed of trust travel with the note. *Deutsche Bank Nat. Trust v. Brock*, 430 Md. 714 (2013). However, Plaintiff's case is factually distinguishable from the Brock case. Plaintiff rebutted the presumption that Wells Fargo or anyone they represented had a claim to her property and Plaintiff consistently disputed any default of the alleged debt. Further, Plaintiff disputed the validity of the indorsements on the alleged note and Defendant has yet to prove the authenticity of the indorsements on the alleged note in order for the "deed of trust to travel with the note."

Plaintiff also objects to the Proposed Findings and Conclusions for the following reasons:

1. On May 13, 2014, at the Relief from Stay Hearing, Plaintiff testified that Defendant presented two different versions of the alleged note. Plaintiff also submitted into the record an Affidavit for the Record, April 24, 2014 Deposition Hearing Incident (Adv. Proc. Doc. 41) Neither Plaintiff's oral testimony nor Affidavit has been rebutted or refuted by Defendant or its attorneys. Further, as stated above, "Plaintiff have received **a Certified Copy** of the alleged Note from Wells Fargo Home Mortgage **with no indorsements** in September 2012 see **EXHIBIT L** attached." (Amd Complt., pg. 14, ¶46). Plaintiff asserts that Defendant, by and through its attorneys, presented Plaintiff with **three different versions** of the alleged note is an act of counterfeiting which is a crime under Title 18; and Plaintiff is not in receipt of any evidence to the contrary.

2. Plaintiff disputed the authenticity of the indorsements placed on the alleged note in the Bankruptcy Relief from Stay and also this adversary proceeding. Defendant still has not proven how the special indorsement from American Home Mortgage to Wells Fargo and Wells Fargo to an unnamed payee appeared on the alleged note. Defendant also asserts Freddie Mac is the owner and note holder but there are no indorsements to Freddie Mac on the alleged note. When Plaintiff disputed the authenticity of the alleged indorsements, the Defendant bears the burden of establishing the authenticity of each signature on the Note pursuant to Md. Commercial Law §3-308(a), §3-501 and the Federal Rules of Evidence. As of this date, Defendant has yet to prove the authenticity of the indorsements.

3. Wells Fargo alleges to be the "holder" but this assertion conflicts with their letter dated November 22, 2011 which states "the investor/note holder for this loan was Federal Home Loan Mortgage Corporation" (Amd. Complt.¶44, Exhibit I) herein after **ANNEX A**. "Again, this conflicts with the fact the assignment was first executed in behalf of the original lender, American Home Mortgage, executed to WELLS FARGO BANK, NA on **June 28, 2012 as being the first transfer of interest in this loan to anyone.**" (Amd. Complt. ¶44). "Yet Plaintiff has a letter of January 10, 2012 from Wells Fargo Home Mortgage, see **EXHIBIT K** attached, stating in part "The loan was sold on the secondary

6

market to Federal Home Loan Mortgage Corporation, known as Freddie Mac, on November 14, 2005"" herein after **ANNEX B** (Amd. Complt. ¶45).

From its own letters, Wells Fargo has admitted that the Note and Deed of Trust was securitized. Since Wells Fargo's own documentation shows the alleged loan was securitized, the question now should be, how did Wells Fargo reacquire the alleged note from the secondary market for the June 28, 2012 Corporate Assignment of Deed of Trust to be the first transfer of interest?

4. Further, Defendant does not address the testimony of William McCaffrey professional document examiner and securitization expert "October 22, 2005 the subject loan was placed in a FREDDIE MAC MULTICLASS CERTIFICATES Real Estate Mortgage Investment Conduit ("REMIC") TRUST SERIES 3051." (Doc. 40, Exhibit O). Mr. McCaffrey's affidavit has never been disputed or rebutted by Wells Fargo. Mr. McCaffrey's October 22, 2005 date of when the loan was placed into the trust also conflicts with the date Wells Fargo alleges "The loan was sold on the secondary market to Federal Home Loan Mortgage Corporation, known as Freddie Mac, on November 14, 2005." Defendant's own letters dated November 22, 2011 and January 10, 2012 has proven Wells Fargo is not the "note holder" and clearly places their alleged holding of the note as material fact in dispute.

5. Also, pursuant to Freddie Mac Document Custody Procedures Handbook Duties and Responsibilities March 2011 – 2 Chapter 2 Compliance and Controls, "the trusts that are created through which the Mortgage Participation Certificates are sold **must be the holder, owner and in possession of <u>all notes and security instruments</u>** on which the Mortgage Participation Certificates sold rest for security or the trust would be committing fraud on its investors, standing as further proof that such a pool is the actual repository and owner of Plaintiff's loan instruments and of all the others they own, no longer Freddie Mac itself, nor Wells Fargo Bank, N.A. no other legal entity." (Amd. Complt. pg. 18).

6. Wells Fargo claims they are the servicer acting on behalf of Freddie Mac, and as stated above, pursuant to Freddie Mac's Document Custody Procedure Handbook…"the trusts that are created through which the Mortgage Participation Certificates are sold **must be**

the holder, owner and in possession of <u>**all notes and security instruments...**</u>" therefore Wells Fargo **bears the burden of proving that Agency Relationship.** In the case of *In re Veal*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011) it states, "When debtors...challenge an alleged servicer's standing to file a proof of claim regarding a note governed by Article 3 of the UCC, that servicer must show it has an agency relationship with a "person entitled to enforce" the note that is the basis of the claim. If it does not, then the servicer has not shown that it has standing to file the proof of claim." See, E.Q., *In re Minbatiwalla*, 424 B.R. 104, 108-11 (Bankr. S.D.N.Y. 2010); *Hayes*, 393 B.R. at 266-70; *In re Parrish*, 326 B.R. 708, 720-21 (Bankr. N.D. Ohio 2005).

A valid agency agreement includes clear instruction about the things the agent is permitted to do for the principal or master. In the case of *Green v. H & R Block, Inc.*, 735 A.2d Md. App. at 1048 (1999) "When a party asserts a claim that is dependent upon an agency relationship created by inference, that party has the burden of proving the existence of the principal-agent relationship, including its nature and its extent." *Hofherr v. Dart Industries, Inc.*, 853 F2d 259, 262 (4th Cir. 1988).

A party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence (*Lippincott v East River Mill & Lumber Co.*, 79 Misc 559 [1913]) and "[t]he declarations of an alleged agent may not be shown for the purpose of proving the fact of agency." (*Lexow & Jenkins, P.C. v Hertz Commercial Leasing Corp.*, 122 AD2d 25 [2d Dept 1986]; *see also Siegel v Kentucky Fried Chicken of Long Is.* 108 AD2d 218 [2d Dept 1985]; *Moore v Leaseway Transp/ Corp.*, 65 AD2d 697 [1st Dept 1978].) "[T]he acts of a person assuming to be the representative of another are not competent to prove the agency in the absence of evidence tending to show the principal's knowledge of such acts or assent to them." (*Lexow & Jenkins, P.C. v Hertz Commercial Leasing Corp.*, 122 AD2d at 26, quoting 2 NY Jur 2d, Agency and Independent Contractors § 26). [*10]

7. At the May 13, 2013 Relief from Stay hearing, Plaintiff objected to the proof of claim filed by attorney Kimberly B. Lane, as the "Creditor's Authorized Agent" as hearsay. Wells Fargo Bank, N.A is not a creditor of the Plaintiff. Plaintiff is not in receipt of any

8

evidence that Wells Fargo had any authority to file the proof of claim. Further, Defendant did not name Freddie Mac, the alleged "investor/note holder" on the proof of claim. By filing the illegal Corporate Assignment of Deed of Trust, Defendant has not proven the lien perfection, pursuant to Proof of Claim Rule 3001(d). Defendant's proof of claim was disputed. Plaintiff has asserted over and over that Wells Fargo Bank, N.A. is not a creditor nor have they provided any proof of any agency relationship with any alleged creditor. As stated above, Defendant has the burden of proving the existence of the principal-agent relationship, including its nature and its extent. On page 2 of the Proof of Claim form directly under attorney Kimberly B. Lane's signature as "Attorney for Wells Fargo Bank, N.A." it states:

***"Penalty for presenting fraudulent claim: Fine up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571." (Emphasis added)***

In a decision on March 10, 2009, the Honorable Philip H. Brandt, US Bankruptcy Judge for the Western District of Washington cited the matter of In Re: Jacobson, 19 CBN 522 (Bankr. W.D. Wash. 2009) and denied a motion filed by a servicing agent for lack of standing because it was not brought in the name of the party who had the right to enforce a deed of trust and did not establish that the movant was authorized to act on behalf of the party who had such right.

Black's Law Dictionary Fifth Edition, Page 594, defines Fraud as:

*"An **intentional perversion** of truth for the purpose of inducing another in **reliance upon** it to part with some valuable thing belonging to him or to surrender a legal right."*

*"A false representation of a matter of fact which **deceives and is intended to deceive** another so that he shall act upon it to his legal injury."*

*"It consists of some deceitful practice or willful device, **resorted to with intent to deprive another** of this right, or in some manner to do him injury." (Emphasis added).*

8. Further, Plaintiff discovered that once the note was securitized, it is a legally impossible for Wells Fargo Bank, N.A. to be the "holder" with the rights to enforce. Once converted, the note can no longer exist to be a negotiable instrument under the Uniform

9

Commercial Code (UCC). Also, once a loan has been securitized, reattachment is impossible. Reattachment is impossible for the following reasons:

- Permanent Conversion.

  The promissory note has been converted into a stock as a permanent fixture. Its nature is forever changed. It is now and forever a stock. It is treated as a stock and governed as a stock under the Security Exchange Commission (SEC). Since the Deed of Trust secures the promissory note, once the promissory note is destroyed, the Deed of Trust secures nothing. Therefore, the Deed of Trust is invalid.

- Asset has been written off.

  Once an asset is written off, the debt is discharged since the owner of the asset has received compensation for the discharge in the form of tax credits from the IRS. The debt has been settled.

  The servicer acts as a debt collector of an unsecured note. The servicer is deceiving the court, the city/county, and the borrower when it tries to re-attach the note to the Deed of Trust as if nothing has happened.

- Broken Chain of Assignment under Uniform Commercial Code (UCC).

  The promissory note is a one of a kind instrument. All indorsements (much like indorsements on the back of a check) have to be done as a permanent fixture onto the original promissory note. The original promissory note has the only legally binding chain of title. Without a proper chain of title, the instrument is faulty. Rarely can a lender "produce the note" because by law, the original note has to be destroyed because the note and the stock cannot exist at the same time.

On June 5, 2013, Federal Bankruptcy Judge Marvin Isgur decided <u>Saldivar v. JPMorgan Chase</u>, 2013 WL 2452699 (Bky. S.D. Texas 2013). In this case Judge Isgur allowed Saldivar's claims against JPMorgan in a federal bankruptcy adversary proceeding to go forward.

The case is significant because Judge Isgur found that JPMorgan's securitized mortgage claim against Saldivar may be void if the evidence shows that JPMorgan did not dot its I's and cross its T's in the original securitization of the Saldivar loan. Most specifically, Judge Isgur found that, if JPMorgan fails to show that the securitization trustee Deutsche Bank (the legal owner of the Saldivar loan) actually physically received the Saldivar note and mortgage within 90 days of the closing of the securitization, then the mortgage *will be void* according to New York trust law. Judge Isgur's decision relied on Judge Wayne Saitta's decision and analysis of

10

New York Trust Law in <u>Wells Fargo v. Erobobo</u>, 2013 WL 1831799, 2013 N.Y. Slip. Op. 50675(U) (NY Supreme Court, Kings County, 4/29/13).

This case is significant for the following reasons. First, **New York trust law governs all 62 million securitized loans**. This "choice of law" provision is generally found in section 11 of the securitization pooling and servicing agreement ("PSA").

Second, Judge Isgur is the first federal judge to acknowledge that a securitization trustee's timely acceptance of physical delivery of the note (and an executed assignment of mortgage) is relevant to whether the trustee (or a servicer acting on its behalf like JPMorgan in this case) has any right to obtain a legal remedy against a borrower. Judge Isgur is asking JPMorgan to "show him the note" and further asking JP to show him whether and how Deutsche Bank claims the right to collect on the note. Further, if the original note exists, it will not have been endorsed by any party from whom the PSA requires endorsement. There will be no endorsement by the PSA Originator, Sponsor or Depositor. Nor will Deutsche Bank be in possession of PSA-required assignments of mortgage to and from these entities.

All PSAs require that the PSA Trustee certify a "complete chain of title" with duly endorsed notes and required assignments of mortgage. This is found in section 2.01 of most PSAs. In the Saldivar case, absent fraud, JPMorgan will be unable to show that Deutsche Bank accepted delivery of the note within 90 days of the closing of the PSA. JPMorgan will be completely unable to establish that Deutsche Bank holds legal title to the note and mortgage with a complete chain of title to and from all PSA parties. If Judge Isgur rigorously cross examines JPMorgan's claim, he will find that JPMorgan **is perpetrating a fraud upon the court**, as neither JPMorgan nor Deutsch Bank can show that they loaned anything to the Saldivars. Neither JPMorgan nor Deutsche Bank will be able to show that they are in any way injured as a result of Salidivar failing to pay on a 2004 loan originally payable to Long Beach Mortgage Company. If the truth is uncovered, Judge Isgur will find that the Deutsche Bank/JPMorgan PSA is a "daisy chain" fraud that victimized both the Saldivars and the MBS investors who falsely believed they were investing in the Saldivar loan.

Fourth and finally, Judge Isgur's decision is important because it represents a sane and sober analysis of securitized loan transactions. Saldivar's demand that JP Morgan "show me the note" is relevant because a note is a promise to pay and is a negotiable instrument governed by Article 3 of the UCC. Only a valid "holder" of a negotiable instrument can enforce it. A mortgage is a security instrument that gives the note holder the right to take a home for non-payment of the note. If the holder of the mortgage is not entitled to enforce the note, then it cannot enforce the mortgage and seize the collateral, the Saldivar home. This is $2 + 2 = 4$.

Judge Isgur's decision may finally cause other courts to recognize that there are 62 million void securitized mortgages and that this massive Wall Street fraud was the reason for the October 2008 Bank Bailouts, which only made matters worse.

In Judge Wayne Saitta's decision, he stated, "The assignment of the Defendant's note and mortgage, having not been assigned from the Depositor to the Trust, is therefore void as in being contravention of the PSA. The evidence submitted by Defendant that the note was acquired after the closing date and that assignment was not made by the Depositor, is sufficient to raise questions [*10] of fact as to whether the Plaintiff owns the note and mortgage, and precludes granting Plaintiff summary judgment." Wells Fargo v. Erobobo, 2013 WL 1831799, 2013 N.Y. Slip. Op. 50675(U) (NY Supreme Court, Kings County, 4/29/13).

Further, New York Supreme Court Judge Arthur Schack testified before the U.S. House of Representatives Committee on Oversight and Government Reform in 2012 about his experience with the problems the banks face with foreclosures in his courtroom. Judge Schack stated:

> *"My experience in dealing with residential foreclosures has given me a unique perspective on what's happening with the housing market. I am not going to discuss any specific cases – lenders or homeowners. But I've observed many problems — including – but not limited to – the shoddy paperwork executed by lenders or their mortgage services determining the actual owners of mortgages and notes; and the disproportionate impact of foreclosures upon minorities and neighborhoods that have a prominent minority population."*
>
> *"As a judge I am the neutral. My role is to apply the law equally to all parties so we have a level playing field. For a lender to receive a judgment of foreclosure,*

12

*is similar to any other type of judgment, due process of law must be followed. I have taken an oath to uphold this. My job is to apply justice to each individual case no matter how the chips fall."*

*"Now for a plaintiff to receive a judgment of foreclosure it must demonstrate three things to the court. The existence of a mortgage note — the Plaintiff's ownership of the mortgage and note — and the default of the Defendant. This might sound relatively simple — but in this age of mortgage securitization and numerous assignments of mortgages and notes – it's not easy in many cases to demonstrate the Plaintiff's ownership of the mortgage and note. Further — the Plaintiff must demonstrate standing — that is – that means — that it or its predecessor in interest owns the mortgage note when the foreclosure case commenced."*

*"I have been confronted many times with the problem of determining who actually owns the particular mortgage and note. I have seen a plethora of cases with defective assignments of mortgages and notes by robo-signers. And I continued to see conflicts of interest. In numerous cases I'll see that individuals might have signed a mortgage or note as an officer as in entity A. And then days or weeks later signed an affidavit on behalf of mortgage entity B. So I have also noticed defects in the notarization of assignments and affidavits – missing powers of attorney – defective powers of attorney for mortgage services — who submit affidavits on behalf of alleged Plaintiffs attempts to retroactively assign mortgages and notes to attempt to legitimatize foreclosures actions; and failure to produce pooling and servicing agreements that detail the powers that are allegedly given to mortgage services."*

Plaintiff asserts, in light of the above, it is a legal impossibility for Wells Fargo to be the "holder, has authority to enforce the note" as Judge Alquist stated in her Proposed Findings and Conclusions. Plaintiff asserts Defendant fabricated the indorsements on the alleged note and filed the illegal Corporate Assignment of Deed of Trust into the Baltimore City Land Records to misrepresent to the court and Plaintiff that Defendant was the legal "note holder" with the authority to enforce, when it fact they were not. "[W]hen a servicer claims to be the holder of the note, the law calls an allegation like this "a sham", and defines it as "good in form but false in fact and not pleaded in good faith."" *Meadows v. Edwards*, 82 So. 2d 733 (Fla. Supreme Court 1955).

Further, by and through its attorneys, Wells Fargo Bank, N.A. has entered the same illegal Corporate Assignment of Deed of Trust into numerous court records misrepresenting to

13

Plaintiff and various courts in Maryland that the fabricated assignment was valid, bringing **"Fraud on the Court"** in the following court records:

- In the Circuit Court for Baltimore City, Case Number: 24-O-13-000528, John E. Driscoll, III, et al. v. Renee L. McCray;
- In the United States District Court for the District of Maryland, Civil Action Number: GLR-13-CV1518, MCCRAY v. FEDERAL HOME LOAN MORTGAGE, ET AL.;
- In the United States Bankruptcy Court for the District of Maryland, In Re: RENEE LOUISE MCCRAY, Case Number: 13-26131;
- In the United States Bankruptcy Court, Adversary Proceeding Case Number: 13-00710, McCray v. Wells Fargo Bank, N.A.; and
- In the United States Court of Appeals for the Fourth Circuit, Appeal No. 15-1444, RENEE L. MCCRAY v. FEDERAL HOME LOAN MORTGAGE CORPORTION, et al.

Plaintiff asserts she had no knowledge of this felony crime when she filed for bankruptcy protection in September 2013. Nor did Plaintiff know that the alleged original lender, American Home Mortgage, never gave Plaintiff a loan and Plaintiff has disputed and continues to dispute any default under the alleged loan and demands strict proof that a loan was ever given to Plaintiff by the alleged lender, American Home Mortgage. Defendant, Wells Fargo, is against Plaintiff receiving a 2004 Examination because it would reveal that Defendant cannot prove a loan was ever given to Plaintiff from the alleged lender, American Home Mortgage, and that they had no standing in the Bankruptcy Case 13-26131 to have been granted the Relief from Stay.

In Plaintiff's Motion for Relief from Judgment or Order (Doc. 6, pgs. 8-9), Plaintiff requested the Court to take judicial notice[1] of the public bankruptcy records of In Re: Carlos Mota – Case No. 10-13989(shl), Adversary Proceeding 13-01553-alg and In Re: America Sanchez 10-1490-shl. Plaintiff asserts these bankruptcy cases are significant to Plaintiff's adversary proceeding, because if Plaintiff is allowed to move forward with discovery, Plaintiff will be able to prove she is just as much a victim of fabricated documents being used against her by Wells Fargo Bank, N.A. as Mota and Sanchez.

Plaintiff is requesting the court to please take **Judicial Notice** of another recent bankruptcy case involving Defendant, Wells Fargo Bank, N.A. In Re: Cynthia Carrsow-

---

[1] See Papasan v. Allain, 478 U.S. 265, 269, n. 1 (1986)(the court is "not precluded in [its] review of the complaint from taking notice of matters of public record"); Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007); Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("the district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

Franklin, Case No. 10-200101 (rdd). In a stunning 30-page decision on January 28, 2015, Judge Robert Drain, a federal bankruptcy judge in New York's Southern District, blasted Wells Fargo mortgage servicer, for the false documents it used in trying to prove its right to foreclose on Cynthia Carrsow-Franklin's home. Judge Drain had a message for Wells Fargo: "Forged" foreclosure documents don't cut it in New York's federal courts.

Judge Drain shredded Wells Fargo's arguments regarding two crucial documents needed to prove ownership of a loan: an indorsement on a note and an assignment of mortgage. He stated, "…[T]he blank indorsement, upon which Wells Fargo is relying, was forged,"…"Nevertheless it does show a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims, WHICH IS EXTRAORDINARY," wrote Judge Drain with emphasis. Drain went on to say that "It is conceivable that all of Wells Fargo's newly created mortgage assignments and newly created indorsements were proper" but that the burden was on Wells to show that, and it didn't. Drain added: "Moreover, Mr. Kennerty's testimony does not stop at describing manufactured mortgage assignments. He also testified that his 'assignment team's' duties were not limited to processing assignments, including, when determined necessary, creating them; in addition, the 'assignment team' included people tasked with endorsing notes."

On March 31, 2011, Wells Fargo Bank, N.A. entered into a Consent Order with the Office of the Comptroller of the Currency (OCC) under which the OCC made certain findings in connection with Wells Fargo Bank's foreclosure practices, which findings Wells Fargo Bank neither admitted nor denied. Well Fargo agreed in the consent order, among other things, and subject to the OCC's approval (i) to establish a Compliance Committee to monitor and coordinate Wells Fargo Bank's compliance with the Consent Order, (ii) to create a comprehensive Action Plain describing the actions needed to achieve compliance with the Consent Order;

(iii) to submit an acceptable compliance plan to ensure that its mortgage servicing and foreclosure operations, including loss mitigation and loan modification, comply with legal requirements, OCC supervisory guidance, and the terms of the Consent Order; (iv) to submit a plan to ensure appropriate controls and oversight of Wells Fargo Bank's activities with respect to

15

the Mortgage Electronic Registration System; (v) to take certain other actions with respect to its mortgage servicing and foreclosure operations; and (vi) to conduct a foreclosure review through independent consultant on certain residential foreclosure actions. Plaintiff asserts, Defendant has violated this consent order by fabricating the June 26, 2012 Corporate Assignment of Deed of Trust and filing it into the Baltimore City Land Records for Plaintiff's property.

On February 9, 2012, the federal government and 49 state attorneys general have reached a landmark $25 billion agreement with the nation's five largest mortgage servicers to address mortgage loan servicing and foreclosure abuses. The agreement provides substantial financial relief to homeowners and establishes significant new homeowner protections for the future.

On April 5, 2012, a federal judge ordered the nation's five largest mortgage servicers to comply with comprehensive new mortgage loan servicing standards, to provide substantial direct consumer relief and monetary payments, and to submit to an independent monitor, as part of the $25 billion national mortgage servicing joint state-federal settlement. U.S. District Court Judge Rosemary M. Collyer approved and entered the court order, called a Consent Judgment, against Bank of America Corporation, JPMorgan Chase & Co., Wells Fargo & Company, Citigroup Inc., and Ally Financial Inc. (formerly GMAC).

The Consent Judgment follows a joint complaint, filed March 12th, by the U.S. Department of Justice and state attorneys general from 49 states and the District of Columbia. The complaint, based on a joint federal-state investigation, alleged that the servicers' misconduct "resulted in the issuance of improper mortgages, premature and unauthorized foreclosures, violation of service members' and other homeowners' rights and protections, the use of false and deceptive affidavits and other documents, and the waste and abuse of taxpayer funds."

The U.S. Department of Justice and state attorneys general can enforce through the court process compliance with the servicing standards and the banks' financial obligations. A federal judge may assess civil penalties for violations of the consent judgments.

The settlement includes mechanisms to ensure the banks comply. A federal judge and an independent monitor will oversee the banks' compliance, and federal agencies, state attorneys general, and bank regulators can enforce compliance if there are violations the banks do not fix promptly. The settlement also builds in incentives designed to ensure prompt compliance,

including a large monetary penalty if the banks do not meet targets for distributing the benefits required by the settlement on time. The settlement does not release the banks from criminal liability. It does not prevent individuals from bringing their own claims. Again, Plaintiff asserts, as stated above, Wells Fargo has violated another consent order by filing the illegal Corporate Assignment of Deed of Trust in the Baltimore City Land Records for her property.

## Conclusion

As stated above, Plaintiff has stated a claim for a declaratory judgment for the validity of the illegal Corporate Assignment of Deed of Trust. Plaintiff also asserts "Fraud on the court" voids all judgments. Therefore, Plaintiff is respectfully moving this Honorable Court to vacate its decision of dismissing Plaintiff's complaint with prejudice.

**WHEREFORE,** Plaintiff moves the court to issue an order granting Plaintiff a declaratory judgment that Defendant, Wells Fargo Bank, N.A., is not the note holder with the rights to foreclose on Plaintiff's property and that the Corporate Assignment of Deed of Trust is void ab initio. In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant her the opportunity for leave to amend the complaint.

Respectfully submitted,

Renee L. McCray
Without Prejudice
109 Edgewood Street
Baltimore, Maryland 21229
(410) 945-2424
rlmccray@yahoo.com

## VERIFICATION

I, Renee L. McCray, Plaintiff, does hereby certify under the penalties of perjury, that the facts which as set forth in the above Reply are true and correct to the best of my information, knowledge and belief.

Renee L. McCray

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Reply to Response and Opposition to Plaintiff's Motion for Relief from a Judgment or Order have been sent to the following list below by USPS Certified and First Class Mail on November 20, 2015 (see attached USPS mailing receipt).

Michael S. Barranco
TREANOR POPE & HUGHES, P.A.
500 York Road
Towson, Maryland  21204

Dated:  November 20, 2015

Renee L. McCray

```
===================================
           CARROLL STA
         340 S LOUDON AVE
            BALTIMORE
               MD
            212299998
           2304010009
11/20/2015    (800)275-8777    2:01 PM
===================================
===================================
                    Sale      Final
Product             Qty       Price
Description
_____
First-Class          1        $1.42
Mail
Large Envelope
    (Domestic)
    (TOWSON, MD  21204)
    (Weight:0 Lb 2.20 Oz)
    (Expected Delivery Day)
    (Monday 11/23/2015)
_____
Total                         $1.42
_____
Cash                          $1.42

Order stamps at usps.com/shop or call
1-800-Stamp24. Go to
usps.com/clicknship to print shipping
labels with postage. For other
information call 1-800-ASK-USPS.


*******************************************
Get your mail when and where you want
it with a secure Post Office Box. Sign
up for a box online at
usps.com/poboxes.
*******************************************


    All sales final on stamps and postage
    Refunds for guaranteed services only
          Thank you for your business

            HELP US SERVE YOU BETTER

            TELL US ABOUT YOUR RECENT
                POSTAL EXPERIENCE

                     Go to:
            https://postalexperience.com/Pos

                or scan this code with
                   your mobile device:
```



```
                or call 1-800-410-7420.

                  YOUR OPINION COUNTS




         Bill #:  840-52100107-2-114518-2
         Clerk:   10
```